LeBeau, Appellant, vs. Minneapolis, St. Paul & Sault Ste. Marie Railway Company, Respondent.

*September 12—October 3, 1916.*

*Negligence: Proximate cause: Resulting damages: Reasonable anticipation: Railroads: Carrying passenger beyond destination: Judgment: Acceptance of option: Waiver of errors.*

1. An injury is not proximately caused by a negligent act unless the wrongdoer ought reasonably to have anticipated that an injury to some person would result therefrom; but the resulting damages are proximately related to the injury if they follow it as a natural consequence by an unbroken chain of causation, even though the wrongdoer had no reasonable ground to anticipate that such damages would result from his negligent act.

2. Where a woman, who had by negligence of a railway company been carried to a station five miles beyond her destination, un-

necessarily and unreasonably walked back that distance in the snow on a cold and stormy day, and as a result thereof became ill, it is *held* that such result was caused by her own voluntary and negligent act and was not proximately related to the negligent act of the railway company. *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342, distinguished.

3. Where a defendant elected, when given an option by the trial court, to submit to a judgment against it for a small sum and so terminate the litigation, and afterwards caused such judgment to be entered, it thereby waived the right to object, on plaintiff's appeal, to the judgment or the amount of the damages.

APPEAL from a judgment of the circuit court for Marinette county: W. B. QUINLAN, Circuit Judge. *Affirmed.*

The action was for damages claimed to have been caused plaintiff by negligence of defendant in carrying her, while a passenger on one of its trains, beyond her destination.

The claim of plaintiff was that January 1, 1915, she was on defendant's train with a ticket entitling her to travel thereon from Goodman, Wisconsin, to Gladstone, Michigan; that the train was scheduled to arrive there at 5:30 a. m.; that the conductor took her ticket and placed a check in the window at her seat, indicating the terminal point of her journey; that the trainmen neglected to take such check and call her station as the train arrived there; that in consequence, she was carried by to Masonville, a distance of some seven miles; that she had no funds and could not procure any to defray expenses back to Gladstone so was compelled to, and did, walk back; that she had important business requiring her to reach Gladstone before noon; that the day was cold and stormy and she was not properly clad to make the journey from Masonville to Gladstone on foot and, in so doing, she caught a severe cold and was physically disabled.

Defendant answered, putting in issue plaintiff's allegations of negligence and pleading contributory negligence.

There was evidence to this effect: Plaintiff was carried by her destination as alleged. She was accompanied by her son, who was twenty-two years of age. He was sleeping when

the train arrived at Gladstone.   She was unfamiliar with the
country and relied on the trainmen to notify her of the ar-
rival at Gladstone.   As to whether she was so notified the
evidence was in conflict.   There was further evidence to this
effect: The conductor discovered plaintiff had been carried by
her destination when the train had proceeded not over two
miles beyond it; but he refused to enable her to alight, saying
he had to stop at Masonville, which was five miles from Glad-
stone, and she could leave the train there, which she did.
She and her son then went to the home of a family, living near
by, with which the son was acquainted, and took breakfast.
About 9:30 a. m. she started to walk to Gladstone.   She was
accompanied a short distance by her son and a young woman
of the family where she had taken breakfast.   The son was
keeping company with the young woman.   There was a liv-
ery-stable right across the way from where she took breakfast
at which she could have gotten a conveyance for Gladstone at
a cost of one dollar and fifty cents.   There was a bus making
regular trips to Gladstone and the fare was fifty cents.
There was an opportunity to return to Gladstone by train, but
too late in the afternoon to satisfy her needs.   She had fifty
cents in money and her son at least two dollars and fifty cents.
It required twenty-five cents to pay her fare from Gladstone
to Escanaba, to which place she was bound to see a sick child
of her daughter.   She was informed by some one that it
would cost her five dollars to be taken back to Gladstone, but
she did not inquire for any bus nor make inquiry at the livery-
stable.   It was a very stormy day, so plaintiff's clothes were
wet through and it took her some three hours to complete her
journey.   She was made sick and was considerably disabled
in consequence of her walk.   She arrived at Gladstone and
took an interurban car so she reached her daughter's home at
about 2:45 in the afternoon.   The jury found in her favor,
that she was carried by her destination through negligence of
defendant; that such negligence was the proximate cause of

her injury; that she was not guilty of contributory negligence, and was damaged to the extent of $1,250.

The trial court held that the consequences to plaintiff of her walking to Gladstone were not proximately related to defendant's negligence, and that unless defendant would consent to a judgment for $200, a new trial should be had. It thereupon so consented.

Motions were regularly made on behalf of defendant for relief from the verdict, including one for judgment in its favor on the evidence and one for a new trial, which were overruled. It excepted to the rulings in that regard and stated in writing that the consent to judgment was for the purpose of bringing about an amicable settlement of the case; but it reserved its right to claim a reversal upon appeal by plaintiff, upon the grounds stated in the motions after verdict; that defendant was satisfied the plaintiff was not entitled to judgment and, in any event, not to judgment for $200. Judgment was rendered in plaintiff's favor, on defendant's motion, for $200 and costs.

Notice was duly served under sec. 3049a, Stats., that, upon plaintiff's appeal, defendant would assign errors because the trial court overruled its motion for a directed verdict, and its motions after verdict.

Plaintiff duly excepted to the order compelling her to submit to a judgment in her favor for $200 and costs, and appealed from such judgment.

For the appellant there was a brief by *Rex I. McCreery,* attorney, and *Kaftan & Reynolds,* of counsel, and oral argument by *Mr. McCreery.*

For the respondent there was a brief by *W. A. Hayes,* attorney, and *John L. Erdall,* of counsel, and oral argument by *Mr. Hayes.*

MARSHALL, J. It will be seen that judgment on the verdict as rendered was denied upon the ground of there being

no proximate relation between the damages to plaintiff by reason of her walking from Masonville to Gladstone, and the negligent act of respondent. Did the court err in that regard? That is the question we have to deal with.

We must distinguish between proximate relation from the point of view of respondent when the wrong was committed, and such relation in respect to resulting damages. In the former there must be, at the instant of the wrong, the element that the wrongdoer, in the exercise of ordinary care, ought reasonably to have apprehended that some personal injury might probably follow to another. As to the latter, the element of reasonable apprehension is immaterial. It is only vital that there should be a direct causal connection between the injury and the damage; not, necessarily, an immediate causal connection, but such connection by an unbroken chain of events so it may be said that the damage was a natural consequence of the injury, having regard for the usual course of nature and of cause and effect in a line of unbroken causation. *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342, 359, 11 N. W. 356, 911; *Crouse v. C. & N. W. R. Co.* 104 Wis. 473, 483, 80 N. W. 752; *Fisher v. Western Union Tel. Co.* 119 Wis. 146, 153, 96 N. W. 545; *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S. 469, 475. If the damage follows the wrongful act "in an unbroken sequence, that is, without any intervening, independent cause to break the continuity" then such damage is proximate to the injury, though the wrongdoer had no reasonable ground to apprehend it would occur from the negligent act.

This court has admonished in respect to the importance of distinguishing between the result as applied to the injury and that as applied to the damage. *Fisher v. Western Union Tel. Co., supra.* This case falls within the second class mentioned. The wrong was complete when appellant was negligently carried by her destination. No damage, to speak of, was the immediate result. All, substantially, was such result of the walk back to Gladstone which did not commence

LeBeau v. Minneapolis, St. P. & S. S. M. R. Co. 164 Wis. 30.

until several hours after the arrival at Masonville. In the meantime appellant was perfectly safe. She found comfortable quarters at the home of a family with which her son was acquainted, where she had breakfast. Her peril commenced when she began her five-mile walk, which took her some three hours. That she was seriously damaged by such journey, appears, pretty clearly, from the evidence. Was such journey a natural consequence of the negligent act of respondent, undertaken in the exercise of ordinary care under all the circumstances? If it were not, then it was her voluntary act and broke the chain of causation, starting with respondent's negligence, and commenced a new chain which reached to and included the disabilities forming the basis, in the main, of the finding as to the damages.

Counsel for appellant relied below, and here as well, on *Brown v. C., M. & St. P. R. Co., supra,* and similar cases. It was properly held that such cases were not controlling if appellant unreasonably made the journey on foot. In the *Brown Case* the recovery for the sickness immediately produced by the walk was sustained because plaintiff was caused to leave the train and, under such circumstances, that she reasonably walked three miles in the nighttime, and in inclement weather, to her destination. When she so left, she did not know where she was. There were no buildings in sight. A long freight train obstructed her view in the direction of such buildings as there were. In such circumstances she started west on the track and kept on to her destination, without seeing any building until she got so near such destination that it seemed she better go on rather than seek shelter otherwise. This court held that she was not guilty of any fatal negligence under the circumstances.

Thus it will be seen that the decision in the *Brown Case* was grounded on the fact that it was characterized by an unbroken chain of causation reaching from the negligent act of the railway company to the damage sought to be recovered. The idea was that she was placed in a situation of peril by the

carrier and was not guilty of any want of ordinary care in extricating herself from it. Here the trial court was of the opinion that the principle of the *Brown Case* did not apply because there was an efficient intervening cause happening after the wrong of the carrier,—the voluntary negligent act of appellant in making the perilous journey she did.

The principle of *Brown v. C., M. & St. P. R. Co.* was controlling in *Patry v. C., St. P., M. & O. R. Co.* 82 Wis. 408, 52 N. W. 312; *Nelson v. C. & N. W. R. Co.* 130 Wis. 214, 109 N. W. 933; and other cases decided by this court, and in many found in other jurisdictions. The following are good illustrations: *Indianapolis, B. & W. R. Co. v. Birney,* 71 Ill. 391; *Texas & P. R. Co. v. Cole,* 66 Tex. 562, 1 S. W. 629; *Carter v. Southern R. Co.* 75 S. C. 355, 55 S. E. 771; *Natchez, C. & M. R. Co. v. Lambert,* 99 Miss. 310, 54 South. 836; *Chicago, R. I. & P. R. Co. v. Brisbane,* 24 Ill. App. 463; *Chicago & E. I. R. Co. v. Mitchell,* 56 Ind. App. 354, 105 N. E. 396; *St. Louis S. W. R. Co. v. Foster,* 46 Tex. Civ. App. 517, 103 S. W. 194; *International & G. N. R. Co. v. Terry,* 62 Tex. 380.

Perhaps the most significant case cited is *Indianapolis, B. & W. R. Co. v. Birney, supra.* Plaintiff, a physician, who was on his way to see a patient, was wrongfully left at a station several miles from his destination. He had his option to remain six hours for the next train, or procure some other conveyance. He could have so remained in a safe place. It was such a cold day that to walk to the next station was, as he must have known, perilous to his health. He did not use reasonable care to obtain passage by train, or some other comfortable way, but, unnecessarily, risked his health by walking. Damages resulted. It was held that his conduct broke the chain of causation between the negligent act of the railway company and the damages, and, therefore, he could not recover, the court saying:

"He should have used all precautions in so making the journey as to produce the least injury to himself that reason

would dictate. He had no right to act with recklessness or wantonly, and then claim compensation for the injury thus inflicted. Had he attempted to walk to the next station barefoot, and his feet had been frozen, would any sane man believe he could have recovered for such injury?" "The injury . . . was unnecessarily, if not recklessly, induced. It was the improper, voluntary act of appellee. . . . He must be confined to the proximate and natural damages resulting from the wrong."

The element of proximate relation was thus spoken of in respect to whether the chain of circumstances, commencing with the carrier's negligent act, was severed by negligence of the plaintiff.

The principle by which this case is to be tested is clearly defined in *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342, 11 N. W. 356, 911, and if the trial court was not clearly wrong in holding that appellant's conduct broke the chain of causation commencing with respondent's negligent act, so it did not reach to her sickness resulting immediately from her walk to Gladstone, then the decision that she was not entitled to recover therefor cannot be disturbed.

After carefully studying the evidence, we are unable to hold in favor of appellant. It appears, beyond dispute, that she was not in any danger until she started out on the walk to Gladstone. She was comfortably located with a family with whom her son was well acquainted. There was no pressing necessity for her to immediately complete her journey. She and her son had ample money to pay her expenses from Masonville to Escanaba. She did not make reasonable efforts, under the circumstances, to reach Gladstone without doing so by walking. The conditions were so bad that the railroad trains were behind time and it took her some three hours to walk the five miles. The snow and slush were so bad on the railway track, and it was so stormy, that any one, however strong, would not have made the journey she did unless there was some very pressing necessity therefor. The situation can best be told by the condition she testified she

was in at the end of her journey, and her relation as to the weather. She said: "The track was full of snow and it was storming awfully. When I reached Gladstone I was almost frozen. I was wet clear up to my waist, and ice and icicles up over my skirts, and my shoes were wringing wet. You could wring water out of them."

Facing the foregoing, is there any wonder that appellant experienced serious consequences from her journey. If those consequences were proximately connected with respondent's negligent act, it should repair her damage; but if they were the result of her own voluntary, imprudent act, it should not, and such is the rule of *Brown v. C., M. & St. P. R. Co.* We are unable to reach the conclusion that the trial court was wrong in respect to the matter. There does not appear any satisfactory evidence to justify appellant in subjecting herself to the danger which she did. She, doubtless, could have remained where she was entertained at breakfast until the train came back in the afternoon by which she could have returned to Gladstone for about fifteen cents. It would have postponed her arrival at her sister's for a few hours, but that does not appear very material. Had she exercised reasonable care in the matter, she would have discovered that she could return to Gladstone by bus for fifty cents, or livery for one dollar and a half, and have obtained that service. More need not be said.

As to the exceptions urged upon our attention on behalf of respondent, it seems that the claimed errors were waived by respondent formally accepting the offer of opportunity to submit to a judgment for $200 and costs, and so terminate the litigation, and causing judgment to be entered accordingly. Such is the reasonable conclusion and is required by *Agnew v. Baldwin,* 136 Wis. 263, 116 N. W. 641.

*By the Court.*—The judgment is affirmed.